ÁUREA PABÓN RAMÍREZ, ETC., ET AL. Plaintiffs and Appellees, v. RAFOLS MORALES, Defendant and Appellant.

No. 11713. Argued March 1, 1956.—Decided April 30, 1956.

*Mario Báez y García* for appellant. *Eugenio Sánchez Ruiz* for appellees.

PER CURIAM.

At the beginning of 1954, Áurea Pabón Ramírez, in her own behalf and in representation of her minor son, Juan Rafael, filed an action of filiation and support against appellant herein. After trial on August 5, 1954, the Superior Court, Mayagüez Part, made the following findings of fact:

"1.—The plaintiff, Áurea Pabón Ramírez, is single, 25 years old, and although she has two children, has never married.

"2.—The defendant is a man 46 years old who was married until 1949, having two legitimate children by said marriage. In 1949 the defendant was divorced, and has remained single ever since.

"3.—Near the end of 1949, when the defendant was already divorced, he met plaintiff. At the time defendant lived alone in his house at Rosa Street in Mayagüez, and the plaintiff worked as a maid in the house next to his, and they began to have sexual relations shortly after they met.

"4.—Thereafter, and until May 1953, the defendant indulged periodically in sexual relations with the plaintiff, first in his house where he continued living alone until the end of 1950, and later when defendant went to live with his relatives, on the farm that the defendant owns in the municipality of Maricao.

"5.—Silvia Morales Pabón, a girl born on November 3, 1950, was the offspring of their sexual relations, and she was registered as the natural acknowledged daughter of plaintiff and the defendant. The defendant acknowledged this child on the advice of an attorney.

"6.—After her first child was born the plaintiff went to live with her parents in the ward of Guanajibo, at Hormigueros. About that same time, the defendant went to live with his mother, in Mayagüez, but even then, plaintiff and defendant continued their sexual relations periodically at his farm at Maricao on occasions when the plaintiff visited the defendant to obtain money for the girl's support. At times plaintiff stayed three or four days with defendant at his farm.

"7.—As a result of these continued sexual relations with the defendant, plaintiff became pregnant again, and upon defendant's insistence that she procure an abortion, plaintiff stopped all relations with him.[1] In view of her refusal, he told her not to count on his help after the child was born, and merely gave plaintiff $20 for childbirth expenses.

"8.—On July 22, 1953, the plaintiff gave birth to a boy who was registered under the name of Juan Rafael Pabón, as natural son of the plaintiff.

---

[1] This took place on May 1953 when the plaintiff was well over six months pregnant.

"9.—Despite all the steps taken by the plaintiff, the defend- ant has refused to acknowledge the boy as his son.

"10.—We have no doubt that the boy Juan Rafael Pabón is the defendant's son. Plaintiff's testimony concerning her relations with the defendant deserved our entire credit, and during the trial we were also able to appreciate the remarkable likeness between the boy, Juan Rafael, and the defendant.

"11.—The plaintiff lacks sufficient means to attend to the needs of her second child. Contrariwse, the defendant is a prosperous person, being the owner of a coffee plantation of 381 cuerdas located at Km. 18 of the road leading from Mayagüez to Maricao, and is therefore in a condition to provide for all the needs of his son."

Based on the foregoing findings, the Superior Court held that although there never existed a state of concubinage between the plaintiff and the defendant, nor was the uninterrupted possession of the status of natural child proved, Juan Rafael is, nevertheless, entitled to be acknowledged as a natural son of the defendant, with the same rights with respect to his father as the rest of the legitimate children. The former conclusion is based on the fact that, *since Juan Rafael was born on July 22, 1953,* § 1, Art. II of the Constitution of the Commonwealth of Puerto Rico and the provisions of Act No. 17 of August 20, 1952, (Sp. Sess. Laws, p. 200), retroactive to July 25, 1952, were applicable, and hence the action of filiation in the case at bar is not governed by the requirements of § 125 of the Civil Code of Puerto Rico. 31 L.P.R.A. § 504. Therefore, "since it has been satisfactorily proved that the defendant is in a position to support his son" the lower court rendered judgment declaring Juan Rafael to be the "natural acknowledged son" of the defendant, with the right to bear his surname and with all other rights with respect to his father that correspond to legitimate children. It awarded $40 monthly for support and also sentenced defendant to pay the plaintiff the sum of $100 for attorney's fees.

On September 15, 1954, the defendant appealed from said judgment and assigns the following errors:

"First: That the lower court committed manifest error of fact and of law in holding that the present action of filiation is not subject to the provisions of § 125 of the Civil Code, and .

"Second: That the lower court committed manifest error of fact and of law in holding that the Constitution of the Commonwealth of Puerto Rico has eliminated the requirements of § 125 of the Civil Code of Puerto Rico."

 After examining the evidence introduced by both parties during the trial and the applicable rules of law, we hold that this appeal is frivolous and completely devoid of merit. Therefore, the judgment of the lower court will be affirmed, modifying it to the effect that "the minor Juan Rafael Pabón is declared to be the *son* of the defendant, with the right to bear his surname and all the other rights corresponding to legitimate children by virtue of the law." Besides, the appellant has acted with manifest obstinacy in filing an appeal in this case, for which reason he is ordered to pay appellee $500 for attorney's fees on appeal. 32 L.P.R.A. § 1461.

